UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PAUL R. DILGER, DERRICK J. HAMMETTER, ANTOINETTE M. VINKAVICH, PATRICIA A. SKRZYPCHAK, AND DON TIEGS, <br><br> Plaintiffs, <br><br> v. <br><br> IOD INCORPORATED, ABC INSURANCE CO., VERISMA SYSTEMS, INC., DEF INSURANCE CO., CIOX HEALTH, LLC, and GHI INSURANCE CO., <br><br> Defendants. | Case No.: 2:17-CV-1753 |

**CIOX HEALTH, LLC'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND, AND IN THE ALTERNATIVE, FOR ENTRY OF DEFAULT AGAINST CIOX**

This is a putative class action of nationwide scope where the amount in controversy far exceeds $5 million and no defendant is a citizen of the same state as any named plaintiff. As such, it is just the type of case that Congress intended to be heard by a federal court when it enacted the Class Action Fairness Act of 2005 ("CAFA"). National policy thus favored removal of this case and favors the Court's maintenance of jurisdiction over the case.

Against this backdrop, Plaintiffs incorrectly argue that federal policy disfavors removal and that Ciox has failed to meet a burden that did not arise until Plaintiffs challenged Ciox's Notice of Removal. Plaintiffs' arguments fail because this case easily satisfies all of the requirements for diversity jurisdiction under CAFA, and a preponderance of the evidence refutes Plaintiffs' challenge to Ciox's assertions regarding the minimal diversity and amount-in-controversy requirements.

Plaintiffs' request for entry of default judgment is similarly unpersuasive. Federal policy favors resolution of cases on the merits, so Ciox's showings that (1) its failure to timely file a response to the Amended Complaint was the result of excusable neglect, (2) Plaintiffs have not been prejudiced by Ciox's attorneys' error, (3) the amount in controversy is large, and (4) there are likely to be genuine fact issues for trial are more than sufficient to overcome Plaintiffs' argument that default is warranted. Further, even if Ciox could make none of these showings, the inequitable and disproportionate impact of a default judgment would still constitute good cause to set aside/refrain from entering default judgment under Federal Rule of Civil Procedure 55(c).

## ARGUMENT

### I. FEDERAL LAW FAVORS REMOVAL IN THIS CASE.

Congress passed CAFA with the express intent to have federal courts hear cases like this one. This is a class action involving a nationwide class of plaintiffs, class representatives from Wisconsin, and defendants based in Georgia and Colorado, so it is precisely the type of "interstate case[] of national importance" that Congress intended to come before a federal court. Plaintiffs describe a body of federal case law that disfavors removal, but none of the cases Plaintiffs cite were class actions, much less class actions decided under CAFA. In fact, CAFA reversed the policy disfavoring removal of eligible class actions, so there is now a finger on the scale in favor of federal jurisdiction. Plaintiffs also misstate Ciox's burden on removal; the Supreme Court has clearly held that no burden of proof arises until a notice of removal is challenged, so Ciox could not yet have failed to satisfy any such burden. As explained in Sections II and III below, Ciox has met the required burden and federal diversity jurisdiction under CAFA is unquestionably established.

### a. CAFA Shows that Congress Intended for Eligible Class Actions to Proceed in Federal Court.

Federal courts have uniformly acknowledged that CAFA both expanded federal jurisdiction over class actions and reversed any presumption against removal in such cases. As the Supreme Court has explained, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014); *see also Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1350, 185 L. Ed. 2d 439 ("CAFA's primary objective" is to "ensure 'Federal court consideration of interstate cases of national importance.'" (quoting § 2(b)(2), 119 Stat. 5)); S. Rep. No. 109–14, p. 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."). The presumption in favor of federal jurisdiction furthers Congress's intent that "CAFA be used to provide for more uniform federal disposition of class actions affecting interstate commerce." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1197 (11th Cir. 2007) (citing CAFA § 2, 119 Stat. at 5).

"CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended . . . [to have] all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (quoting S. Rep. No. 109-14 at 42, U.S. Code Cong. & Admin. News 3, 40). One federal appellate judge observed that "CAFA unquestionably expanded federal jurisdiction and liberalized removal authority . . . thus reversing the restrictive federal jurisdiction policies of Congress that both *Healy* [*v. Ratta*, 292 U.S. 263, 269–70, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)] and *Shamrock Oil* [*& Gas Corp. v. Sheets*, 313 U.S. 100, 106–08, 61 S.Ct. 868, 85 L.Ed.

1214 (1941)] listed as the primary justification for application of the canon." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 342 (4th Cir. 2008) (Niemeyer, J., dissenting).

In the opening paragraph of their argument, Plaintiffs ignore CAFA and the congressional purpose behind it, citing several non-class-action cases for the proposition that the Court should resolve jurisdictional doubts in favor of remand. (Pls.' Br. at 2, Doc. No. 13.) That proposition has no applicability to a case removed under CAFA, so Plaintiffs' attempt to establish a default position antagonistic to removal fails.

### b. *Dart Cherokee Basin* Settled the Standard for Removal Allegations.

In addition to incorrectly arguing for a presumption against federal jurisdiction, Plaintiffs incorrectly suggest that Ciox was required to satisfy a burden of proof in its notice of removal. (*See* Pls.' Br. at 7.) This is odd because Plaintiffs specifically note that a "removing party must support its assertion with competent proof" only "[o]nce the opponent of federal jurisdiction challenges the allegation of the amount in controversy . . . ." (*Id.*) Only two paragraphs later, Plaintiffs declare that "Ciox comes nowhere near its burden of proof," (*id.*), even though Ciox's burden did not arise until Plaintiffs filed the very brief in which that quote appears.

Any confusion is easily resolved by the Supreme Court's decision in *Dart Cherokee Basin*. The Court held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." 135 S. Ct. at 554. Thus, any suggestion that Ciox had, or failed to meet, an evidentiary burden in its notice of removal is incorrect.

## II. CIOX'S NOTICE OF REMOVAL WAS TIMELY.

Although a defendant has no evidentiary burden in a notice of removal, a defendant does have an obligation to *plausibly* allege that the amount-in-controversy requirement is satisfied. Plaintiffs' original Complaint did not permit Ciox to plausibly allege that the amount in controversy exceeded $5 million, so Ciox could not remove at that time. Plaintiffs suggest that Ciox should have wildly speculated that a class where each member has as low as $8 in actual damages would support punitive damages sufficient to reach the $5 million threshold, but that would not have been plausible. Instead, Ciox only removed after Plaintiffs provided a definite amount of punitive damages per violation that they are seeking. Then, and only then, was removal possible under 28 U.S.C. § 1446 and *Dart Cherokee Basin*.

### a. Ciox Could Not Have Plausibly Alleged That the Original Complaint Satisfied the CAFA Amount-in-Controversy Requirement.

In order to understand why Ciox could not have plausibly alleged that the amount in controversy exceeded $5 million based upon the allegations of Plaintiffs' original Complaint, it is necessary to understand the negligible actual damages each putative class member is alleged to have suffered. Plaintiffs' claims are based upon the supreme court's decision in *Moya v. Aurora Healthcare, Inc.*, 2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405, which held that individuals holding HIPAA authorizations may not be charged a $20 retrieval fee or an $8 certification fee for health care records requests under Wis. Stat. § 146.83(3f)(b). Plaintiffs' putative class consists of individuals who were improperly charged one or the other of those fees (or both). (*See* Compl. ¶ 29). Each putative class member therefore has alleged actual damages as low as $8. Even assuming that most putative class members were charged both fees, the actual damages per violation only add up to $28.

In their original Complaint, Plaintiffs alleged that the proposed class "is comprised of **several thousand** persons and entities, who likely possess multiple separate claims." (Compl. ¶ 30 (emphasis added).) Plaintiffs did not allege that there are tens of thousands, or hundreds of thousands, of class members: Plaintiffs limited their estimate to "several thousand." Plaintiffs also alleged that those several thousand class members were entitled to an unspecified amount of punitive damages. (Compl. ¶ 52.)

With these allegations in front of it, Ciox could not plausibly claim that removal under CAFA's $5 million amount-in-controversy requirement was proper. With actual damages limited to $28 per claim and class members limited to "several thousand," there was simply no plausible way that Ciox could remove under CAFA. To illustrate: suppose that Ciox had assumed facts most favorable to Plaintiff regarding class members, number of claims, and punitive damages. That would mean interpreting "several thousand" as 9,000[1], assuming each class member had multiple claims (three in this hypothetical), assuming that each claim was for both certification and retrieval fees ($28), and assuming that punitive damages would be awarded at a generous multiple of actual damages (treble damages in this hypothetical) for *every single claim*. The sum does not even approach $5 million:

Damages per Claim ($28) * Number of Claims (3) = **$84** (Actual Damages per Claimant)

Actual Damages ($84) + Treble Damages ($84*3 = $252) = **$336** (Total Damages per Claimant)

Total Damages ($336) * Class Members (9,000) = **$3,024,000** (Total Amount in Controversy)

Even with completely speculative assumptions that favored Plaintiffs' argument and were individually implausible on their own, the amount in controversy still would have come out to nearly $2 million less than necessary to invoke diversity jurisdiction under CAFA. And as soon

---

[1] It is doubtful that anyone would honestly interpret "several thousand" to mean 9,000, but we do so to give Plaintiffs the benefit of the doubt for the purposes of this hypothetical.

as one begins to consider *plausible* assumptions,² the amount in controversy drops even farther away from the $5 million threshold.

Plaintiffs' entire timeliness argument is premised upon the idea that Ciox should have assumed an absurd amount of punitive damages, and so is unpersuasive. Plaintiffs cite Wisconsin's general punitive damages statute, Wis. Stat. § 895.043³, for the proposition that punitive damages can be as high as the greater of double compensatory damages or $200,000, but that cap is irrelevant here. Simply because the legislature has limited punitive damages in the worst cases to double compensatory damages or $200,000, does not mean that it would be plausible for Ciox to allege that the damages per claimant in this case are likely to reach those caps. In other words, absent an allegation from Plaintiffs that they were seeking punitive damages of $200,000 per claimant, the statutory cap has zero relevance to the plausibility of the amount-in-controversy requirement being satisfied. Ironically, had Ciox removed this case under the original Complaint based upon the § 895.043 punitive damages cap Plaintiffs would likely be making this exact argument. And they would have been correct: under no set of facts would it be plausible to allege $200,000 in punitive damages for $8 in compensatory damages.

Plaintiffs also suggest examples of punitive damages of $5,000 or $2,500 per claimant, but based on what? All Ciox had to go on were Plaintiffs' allegations and potential actual damages of $28 per claim. Ciox had no basis to assume that Plaintiffs would seek punitive damages of nearly **90 times** actual damages ($2,500) or nearly **180 times** actual damages ($5,000).

---

² E.g., (1) fewer class members ("several thousand" is better interpreted as 3,000 or 4,000, not 9,000), (2) lower average actual damages per claim (it is unlikely every claimant was charged *both* a certification and retrieval fee), (3) fewer claims per claimant, (4) a lower multiple for punitive damages, and (5) fewer class members entitled to punitive damages.

³ Plaintiffs actually refer to Wis. Stat. § 895.0<u>34</u>, (Pls.' Br. at 5), but Ciox assumes that to be a typographical error.

7

### b. The Amended Complaint Permitted Ciox to Plausibly Allege That the CAFA Amount-in-Controversy Requirement Was Satisfied.

For the first time in their Amended Complaint, Plaintiffs announced their intention to seek exemplary damages under Wis. Stat. § 146.84(1)(b) and (bm). (Am. Compl. ¶¶ 40-41.) In so doing, Plaintiffs also for the first time identified specific amounts of damages they were seeking. Plaintiffs alleged that the defendants are liable for either exemplary damages of up to $25,000 for knowing and willful violations of Wis. Stat. § 146.83 or up to $1,000 for negligent violations. (*Id.*) While these allegations still permit a range of exemplary damages to be awarded, they at least provide a specific amount that Plaintiffs will seek to recover. Ciox no longer has to resort to pure speculation to guess the amount of punitive/exemplary damages Plaintiffs seek; it is now explicitly laid out in the Amended Complaint. The removal of that speculation permitted Ciox, for the first time, to plausibly allege that Plaintiffs' allegations satisfy the CAFA amount-in-controversy requirement. Ciox filed its notice of removal 28 days after Plaintiffs served their Amended Complaint, so the notice was timely under 28 U.S.C. § 1446(b)(3).

Plaintiffs claim that their identification of a specific $25,000 target for exemplary damages actually *reduced* the scope of potential punitive damages, but again they ignore the plausibility requirement. It would have been completely implausible for Ciox to assume that Plaintiffs were seeking punitive damages of greater than $25,000 per claimant (or per claim) with only $28 in actual damages per claim and a vague assertion of entitlement to punitive damages. Not until Plaintiffs identified their $25,000-per-claim target did Ciox have any basis to allege a $5 million amount in controversy, so Ciox's notice of removal was timely.

## III. ALL REQUIREMENTS FOR DIVERSITY JURISDICTION UNDER CAFA ARE SATISFIED.

The CAFA requirements for removal on the basis of diversity jurisdiction are as follow:

1. The putative class has 100 members or more;

2. Any class member is a citizen of a state different from any defendant; and

3. The aggregate amount in controversy exceeds $5 million.

28 U.S.C. § 1332(d)(2), (5), (6). Plaintiffs do not challenge Ciox's Notice of Removal with regard to the first requirement, but Plaintiffs urge the Court to remand because Ciox has not satisfied the second and third requirements. The Court should deny Plaintiffs' motion because a preponderance of the evidence shows that both of these contested requirements are satisfied.

### a. Minimal Diversity Exists Because Ciox's Sole Member Is a Citizen of Delaware and Georgia.

Ciox Health, LLC is a single-member limited liability company formed under the laws of the State of Georgia. (Decl. of Shawky Haddad ¶ 2, Feb. 5, 2018.) The sole member of Ciox is Smart Holdings Corp., which is a c-corporation incorporated under the laws of the State of Delaware. (*Id.*) Smart Holdings Corp. has its principal place of business in Alpharetta, Georgia. (*Id.* ¶ 3.) The citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). A corporation is a citizen of its state of incorporation and the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). Smart Holdings Corp. is therefore a citizen of Delaware and Georgia, making Ciox a citizen of Delaware and Georgia. The named plaintiffs are all citizens of Wisconsin, (*see* Am. Compl. ¶¶ 1-5), so as a citizen of Delaware and Georgia, Ciox is diverse from all named plaintiffs.

Plaintiffs argue that the Court should remand because Ciox did not properly state its citizenship in its Notice of Removal, but remand on that basis, in the face of indisputable

evidence that Ciox is diverse from all named plaintiffs, would frustrate the intent of Congress in passing CAFA to have cases like this heard by federal courts. Further, Ciox noted that it was based in Georgia in its Notice and identified Smart Holdings Corp. as a Delaware corporation in its Rule 7.1 Corporate Disclosure Statement, so information indicating Ciox's citizenship was already in the record. If the Court wishes Ciox to amend its Notice to clarify the record, it will be happy to do so.[4] Remand, however, is not warranted and would contravene the purpose of CAFA.

### b. The Amount in Controversy Exceeds $5 Million.

Plaintiffs' argument that the amount-in-controversy requirement is not satisfied runs contrary to Plaintiffs' own allegations and is defeated by the evidence submitted with this brief. As discussed above, Plaintiffs have identified a target of $25,000 in exemplary damages per violation of Wis. Stat. § 146.83 and alleged that their proposed class "is comprised of several thousand persons and entities, who likely possess multiple separate claims." (Am. Compl. ¶¶ 30, 40-41.) It only takes 200 claims to exceed the jurisdictional threshold if Plaintiffs hit their target for exemplary damages, so the amount-in-controversy requirement is met solely on the face of the Amended Complaint.

Despite their clear allegations, Plaintiffs have challenged the notion that the amount-in-controversy requirement is satisfied, thus triggering Ciox's obligation to prove that requirement by a preponderance of the evidence. The evidence shows that Ciox's predecessor-in-interest IOD issued over 5,000 invoices to attorneys in many different states who requested patient health care

---

[4] Even where the CAFA-created preference for federal jurisdiction is not applicable, it is appropriate for a district court to permit an amendment to a notice of removal under 28 U.S.C. § 1653 to correct defective allegations of jurisdiction. *N. Illinois Gas Co. v. Airco Indus. Gases, A Div. Of Airco, Inc.*, 676 F.2d 270, 273 (7th Cir. 1982) (permitting amendment to notice of removal outside of 30-day removal period in non-class-action contract case).

records from Wisconsin health care providers using HIPAA authorizations between July 1, 2011 and December 31, 2015, and in which charges for either certification or retrieval fees appeared. (Haddad Decl. ¶ 6.) Such attorneys would fit within Plaintiff's putative class, which includes individuals who received authorization to obtain a patient's health care records and were charged the disputed fees. (*See* Am. Compl. ¶ 29.) The full class definition reads as follows:

> [A]ny person who on or after July 1, 2011, gave authorization to another, and all others who received authorization from the person on or after July 1, 2011, via a HIP AA release form to request and obtain the person's health care provider records from a health care provider in the State of Wisconsin and who were illegally charged by the defendants for certification charges and retrieval fees, contrary to Wis. Stat. § 146.83(3f)(b)4.-5.

(Am. Compl. ¶ 29.)

Plaintiffs allege that IOD knowingly and willfully violated Wis. Stat. § 146.83 by charging class members the disputed fees, and that therefore each class member is entitled to actual damages and exemplary damages of up to $25,000. If Plaintiffs prove these allegations and obtain only a fraction of the available exemplary damages for each of the over 5,000 invoices described above, the amount would easily exceed $5,000,000. When actual damages are included, it would only take exemplary damages of $1,000 per invoice to exceed the threshold, which is only 1/25 of the alleged potential exemplary damages. The evidence thus clearly shows that the amount in controversy is sufficient to establish diversity jurisdiction under CAFA.

Plaintiffs seem to suggest that Ciox is required to present evidence of the *amount* of damages available to each putative class member, despite Plaintiffs having already alleged exactly the amount of damages they are seeking. This argument should not be given any weight; it is absurd to suggest that, in order to avoid remand, a defendant is required to present evidence showing that any plaintiff is entitled to a certain amount of punitive or exemplary damages against that defendant. The evidence of over 5,000 potentially relevant invoices submitted by

Ciox, when considered with the clear allegations in the Amended Complaint, is sufficient to establish that over $5 million is "in controversy." And to the extent there is any doubt that this jurisdictional requirement is satisfied, the legislative history of CAFA unambiguously instructs that federal courts should favor jurisdiction:

> [I]f a federal court is uncertain about whether "all matters in controversy" in a purported class action "do not in the aggregate exceed the sum or value of $5,000,000," *the court should err in favor of exercising jurisdiction over the case*.

S. Rep. 109-14, 42, 2005 U.S.C.C.A.N. 3, 40 (emphasis added).

## IV. THE COURT SHOULD NOT ENTER DEFAULT JUDGMENT AGAINST CIOX.

In the alternative to their request that the Court remand this case to state court, Plaintiffs ask that the Court enter default judgment against Ciox based upon its failure to file a timely response to the Amended Complaint. Plaintiffs' request for entry of default should be denied because the circumstances do not remotely warrant that harsh sanction. From the outset of this litigation, Ciox has appeared and vigorously defended itself, including moving to dismiss the original Complaint and removing the action to this Court. Ciox's failure to file a timely response to the Amended Complaint was the result of its attorneys' excusable neglect, and Ciox immediately filed a Motion to Extend when it learned of the oversight. Further, as detailed above, this is a class action in which the amount in controversy exceeds $5 million. The large amount of damages alone constitutes good cause to refrain from entering default judgment under Supreme Court and Seventh Circuit precedent.

### a. The Standards for Evaluating a Motion for Default Judgment Reflect the Federal Policy Favoring Resolution on the Merits.

Whether to enter default judgment is a decision vested in the sound discretion of the Court. *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1071 (E.D. Wis. 2008). Some of the factors to be considered in making this determination are (1) the possibility of prejudice to the plaintiff (2) the merits of the claims (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a factual dispute, (6) whether the default was due to excusable neglect, and (6) the strong policy favoring deciding cases on the merits. *Rual Trade*, 549 F. Supp. 2d at 1071 (citing 55 *Moore's Federal Practice—Civil* § 55.31[2]). "Generally speaking, it is desirable to resolve cases on their merits." *Id.* (citing *Yong–Qian Sun v. Bd. of Trs.*, 473 F.3d 799, 811 (7th Cir. 2007)).

Courts may also analyze the issue as if it involved the question of good cause for setting a default aside. *Rual Trade*, 549 F. Supp. 2d at 1071. Federal Rule of Civil Procedure 55(c) states that "[t]he court may set aside an entry of default for good cause[.]" The Seventh Circuit Court of Appeals has explained that "Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error; as used in this Rule, the phrase is not a synonym for 'excusable neglect.'" *Sims v. EGA Prod., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007). The *Sims* court further explained that the "good cause" standard is less demanding than the standard for relief from judgment due to mistake, inadvertence, or excusable neglect:

> Another way to see this is that Rule 55(c) uses the "good cause" standard for relief before judgment has been entered, while referring to the standard under Rule 60(b) for relief after judgment. Rule 60(b) allows relief on account of mistake and inadvertence in addition to excusable neglect; the "good cause" standard in Rule 55(c) must be easier to satisfy.

*Id.*

One clear example of a situation where good cause for relief from judgment exists is where, as here, the potential damages are high. The *Sims* court stated that "[d]amages

disproportionate to the wrong afford good *cause* for judicial action, even though there is no good *excuse* for the defendant's inattention to the case." 475 F.3d at 868 (emphasis in original). Thus, it is appropriate for a court to set aside a default judgment, or to avoid entering judgment in the first place, where the damages are disproportionately high, even when the defendant has *no excuse* for defaulting. The Supreme Court has even held that it was an abuse of discretion to default a litigant in a $5.5 million civil suit for *willful* failure to appear in court, given the availability of lesser sanctions. *See Degen v. United States*, 517 U.S. 820, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996).

### b. Federal Law Strongly Disfavors Entry of Default Judgment Here.

Whether evaluated under the factors for a discretionary determination of whether to enter default judgment or under the good cause standard, Plaintiffs' Motion for Entry of Default should be denied. The factual background leading to Ciox's failure to file a timely response to the Amended Complaint is detailed in Ciox's Memorandum in Support of its Motion to Extend Time to Respond to Amended Complaint, filed Jan. 17, 2018 (Doc. No. 16), at pages 2-4. Ciox incorporates that recitation of facts here by reference.

The following factors favor resolution of this matter on the merits:

**(1) Ciox's failure to file a timely response to the Amended Complaint will not prejudice Plaintiffs.** Plaintiffs do not argue that they have been prejudiced or that they will suffer prejudice from Ciox's counsel's scheduling oversight. Ciox's defenses are well-known to Plaintiffs (Plaintiffs have followed and attempted to intervene in a similar class action that has been pending since 2013[5]), and no schedule has been set in this case. Plaintiffs lose nothing by continuing to litigate this case on the merits.

---

[5] *Moya v. Aurora Healthcare, Inc., et al.*, Milw. Co. Case No. 13-CV-2642.

**(2)    The sum of money at stake is large.** Ciox proved above that the amount in controversy exceeds $5 million, but the true amount in controversy will not be evident unless and until discovery on the size of the putative class is complete. Shawky Haddad noted in his declaration that there are over 5,000 potential claims; the true number could be significantly higher.

**(3)    A factual dispute is inevitable.** Plaintiffs' principal claim is based upon a statute, Wis. Stat. § 146.84, that requires a showing of negligence or willfulness to entitle a claimant to recovery. Summary judgment is not typically appropriate in negligence cases precisely because they involve fact-intensive inquiries such as reasonableness and foreseeability. *E.g.*, *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1316 (7th Cir. 1983). In order to prove their statutory claim, Plaintiffs will have to make the typical showings for negligence, most importantly that Ciox failed to exercise the applicable standard of care. It is thus a certainty that, unless Plaintiffs fail to identify evidence showing that Ciox failed to meet the standard of care (entitling Ciox to summary judgment), there will be a fact dispute on at least Plaintiffs' statutory claim.

**(4)    The default was due to excusable neglect.** Ciox explains in detail in its Memorandum in Support of its Motion to Extend at pages 4-6 that Ciox's failure to file a timely response to the Amended Complaint was the result of the excusable neglect of Ciox's attorneys in unusual circumstances during the holiday season. Ciox incorporates that discussion here by reference.

In addition to the factors above and the strong policy favoring resolution of cases on the merits, the good cause standard compels denial of Plaintiff's Motion. Even if Ciox had no excuse for its failure to file a timely response to the Amended Complaint and had not taken immediate action to file a Motion to Extend upon learning of its attorneys' mistake, the size, scope, and

value of this case constitute good cause to refrain from entering default judgment under *Degen* and *Sims*. The true amount in controversy is not yet clear, but it is already established that there are over 5,000 potential claims potentially worth over $5 million. A default judgment of over $5 million would be an incredibly harsh and unfair sanction for a simple calendaring error, particularly where the defendant has already appeared and mounted a spirited defense. The good cause standard exists to prevent such miscarriages of justice.

## CONCLUSION

For the reasons discussed above, neither remand nor entry of default judgment is warranted here. Accordingly, Plaintiffs' Motion to Remand, and in the Alternative, for Entry of Default Judgment Against Ciox should be denied.

Dated: February 6, 2018.

GASS WEBER MULLINS LLC
Attorneys for Defendant Ciox Health, LLC

s/Daniel A. Manna
John Franke, SBN 1017283
Daniel A. Manna, SBN 1071827
241 N. Broadway, Suite 300
Milwaukee, Wisconsin 53202
(414) 223-3300 – phone
(414) 224-6116 – fax
franke@gwmlaw.com
manna@gwmlaw.com